**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY LEE and ROSEMARIE LEE, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSITY MEDICAL CENTER OF PRINCETON, <br><br> Defendant. | Civil Action No. 18-09257 (MAS) (LHG) <br><br> MEMORANDUM OPINION |

**SHIPP, District Judge**

This matter comes before the Court on Defendant University Medical Center of Princeton's (the "Hospital") Motion for Summary Judgment. (ECF No. 52.) Plaintiffs Gregory Lee ("Mr. Lee") and Rosemarie Lee ("Mrs. Lee") (together, "Mr. and Mrs. Lee") opposed (ECF No. 55) and the Hospital replied (ECF No. 61). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court grants the Hospital's Motion.

**I.   BACKGROUND**

Mr. and Mrs. Lee are profoundly deaf and communicate primarily through American Sign Language ("ASL"). (Pls.' Statement of Material Facts ("PSMF") ¶ 1, ECF No. 55-4.) On the evening of Sunday, January 7, 2018, Mr. and Mrs. Lee arrived at the Hospital after Mr. Lee had fallen at home, injured his lip, and chipped two teeth. (Def.'s Undisputed Material Facts ("DUMF") ¶ 1, ECF No. 52-4; PSMF ¶ 11.) Mr. and Mrs. Lee claim that Mrs. Lee called the

emergency room ("ER") at the Hospital prior to their arrival to request an interpreter for Mr. Lee. (PSMF ¶ 11.) Upon their arrival at the ER, the medical staff triaged Mr. Lee, obtained medical information from Mr. and Mrs. Lee using written notes and other means, and then Mr. Lee was taken to a bed in the ER where his lip was attended to by a physician's assistant. (DUMF ¶¶ 2-4; Pls.' Resp. to Def.'s Statement of Undisputed Facts ("RDUMF") ¶ 3, ECF No. 55-3.). Mr. and Mrs. Lee also claim that they requested an interpreter upon their arrival at the Hospital. (PSMF ¶ 12.) At 7:30 p.m., Mr. Lee requested an ASL interpreter, indicating that this was his preferred manner of communication. (DUMF ¶ 5.) The Hospital brought a Video Remote Interpretation ("VRI") machine to Mr. Lee's bedside to connect to an interpreter remotely. (*Id.* ¶ 6.) The medical staff attempted to communicate with Mr. and Mrs. Lee through the VRI machine, but the machine did not function correctly. (*Id.*)

At 9:39 p.m., approval was sought to obtain the services of an on-site ASL interpreter, which the medical staff attempted to do. (*Id.* ¶¶ 7-8.) The medical records indicate that the nursing supervisor provided approval to contact an interpreter and an operator was notified, (Smit Decl., Ex. C. at 3), though during her deposition, the nursing supervisor could not recall if she or anyone else called the interpreter. (Smit Certification, Ex. J. Emmons Tr. 48:2-8.) Because it was late in the evening, however, the Hospital was not able to secure a live interpreter, but informed Mr. and Mrs. Lee that a live interpreter would be present in the morning. (*Id.* ¶ 9; Barton Certification Ex. D., Tr. 59:17-23, ECF No. 52-10.) Mrs. Lee exchanged handwritten notes with the medical staff that described Mr. Lee's condition and the cause of injury and the physician assistant described the suturing process. (DUMF ¶ 10; RDUMF ¶ 10.) After finding a tooth remnant in Mr. Lee's lip, the physician assistant sent Mr. Lee for x-rays to make sure there were no additional embedded particles. (DUMF ¶ 11.)

2

The Hospital recommended that Mr. Lee stay the night for observation and for additional tests the next morning, for which a live interpreter would be present. (*Id.* ¶ 13.) Mr. and Mrs. Lee claim, however, that the Hospital only told them that they would "check on it tomorrow," in response to their request for a live interpreter. (RDUMF ¶ 13.) Mr. and Mrs. Lee decided to leave the Hospital and subsequently visit Mr. Lee's primary physician, against the Hospital's explicit medical advice. (DUMF ¶¶ 14-15.) The next day, Mr. Lee visited his doctor for treatment of the injury and was treated by his physician without the use of an interpreter. (*Id.* ¶ 16.) Later, Mr. Lee communicated with his dentist for the treatment of the same injury using handwritten notes, gestures, and drawings. (*Id.* ¶ 18.) Mr. and Mrs. Lee claim that during both visits to his primary physician and the dentist, Mr. Lee had a difficult time communicating. (RDUMF ¶¶ 16, 18.) Mrs. Lee also communicated with the dentist about major oral surgery concerning Mr. Lee's damaged teeth through handwritten notes. (*Id.* ¶ 19.) Since his injury, Mr. Lee visited the Hospital once, on November 29, 2019, and utilized an interpreter. (*Id.* ¶ 27.)

Relevant here, the Hospital maintains a policy, entitled "Services for the Hearing Impaired," that explains that effective communication is a patient right. (DUMF ¶ 28.) In addition, the Hospital provides staff training, provides free ASL translation services, and instructs that assistive equipment such as VRI are available for deaf and hearing-impaired patients. (*Id.* ¶ 28.)

Mr. and Mrs. Lee filed this action against the Hospital on May 15, 2018, alleging causes of action for violations of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("RA"), and the New Jersey Law Against Discrimination ("NJLAD"), seeking declaratory, compensatory, and injunctive relief. (*See generally* Compl., ECF No. 1.) On March 1, 2019, Defendant originally moved for summary judgment (*see* ECF Nos. 14-15), but that motion was administratively terminated pending resolution of a discovery dispute (ECF No. 24).

On July 9, 2021, Defendant renewed its Motion for Summary Judgment. (ECF No. 52.) Mr. and Mrs. Lee opposed (ECF No. 55), and Defendant replied (ECF No. 61).

## II.   LEGAL STANDARD

Pursuant to Rule 56(a)[1] of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A dispute is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it can "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the non-moving party bears the burden of proof at trial, the movant may discharge its burden by pointing to an absence of evidence necessary to support the non-movant's claim. (*Id.* at 325.) Alternatively, a moving party may submit affirmative evidence that negates a material element of the non-moving party's claim. *Id.* If the movant brings affirmative evidence or makes a showing that the non-movant lacks evidence essential to its claim, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The burden of persuasion, however, rests on the non-moving party to establish each element necessary to succeed on the claims on which it bears the burden of proof at trial. *Id.* at 322.

---

[1] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

To decide whether a genuine dispute of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher*, 455 F.3d at 423 (citing *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)). On a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. Absent a genuine dispute for trial, summary judgment as a matter of law is proper. *Id.* at 249-50.

### III.   DISCUSSION

The Court will begin by addressing the Hospital's request to strike the declarations of Christine Sherwood and Joanna Chaitram. Next, the Court will address the Hospital's Motion for Summary Judgment.

#### A.   The Hospital's Request to Strike the Sherwood and Chaitram Declarations

In opposing Summary Judgment, Mr. and Mrs. Lee submitted the declaration of Christine Sherwood, Vice President of ASL Interpreter Referral Services and Joanna Chaitram, another Deaf patient of the Hospital. (*See* ECF No. 56-10.) The Hospital objected, arguing that the declaration of Ms. Chaitram and Ms. Sherwood should be stricken under Rule 37(c)(1) because Mr. and Mrs. Lee did not disclose the witness beforehand. (*See* Defs.' Reply Br. 5.) Absent any explanation by Mr. and Mrs. Lee as to their failure to disclose these witnesses during discovery, the Court ordered an explanation. (ECF No. 62.) Mr. and Mrs. Lee responded on December 15, 2021. (ECF No. 63.)

Rule 37 requires exclusion where a party has "without substantial justification" failed to make required disclosure, and the failure is not "harmless." Fed.R.Civ.P. 37(c)(1). In determining whether or not evidence should be excluded under Rule 37, the Court must consider:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule . . .

5

> would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court's order.

*Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir.1997) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–905 (3d Cir.1977)). The Court finds that, on balance, consideration of these factors weighs against excluding either declaration. In considering the first factor, prejudice, the Court finds that Defendants will not be unduly prejudiced by the inclusion of these declarations. As noted *infra*, these declarations are scarcely probative of any disputed material fact. For example, Ms. Sherwood's declaration simply states that ASL Interpreter Referral Service was not contacted to provide an interpreter. (*See* Smit Certification Ex. K.) The Hospital's policy, however, reflects that there was at least one other comparable organization that provided interpreters. (*See* Barton Certification Ex. J.) Thus, the Court does not find this declaration contradicts the medical records submitted or is otherwise prejudicial to the Hospital. (*See* Smit Certification Ex. C.) As for Ms. Chaitram's declaration, it reflects that she sought treatment at the Hospital on several occasions and requested an interpreter, but the Hospital did not provide one. (*See* Smit Certification Ex. D.) The declaration falls short of providing relevant information to this matter, such as whether an interpreter was required during Ms. Chaitram's visits. The declaration therefore is hardly probative as to whether injunctive relief is necessary.

In considering the remaining Rule 37 factors, the Court finds that they also weigh in favor of allowing the declarations. The declarations are unlikely to result in other disruptions of the proceedings and there is no evidence that Mr. and Mrs. Lee's delay in providing the declarations were a result of bad faith or willfulness. Accordingly, the Court declines to strike these declarations.

### B. Motion for Summary Judgment

Next, the Court considers the Hospital's Motion for Summary Judgment. The Hospital argues that the Court should grant its Summary Judgment Motion for several reasons. First, the Hospital argues that, as a matter of law, an interpreter was not required as evidenced by the record that reflects Mr. Lee routinely uses written notes, lip reading and gestures with his medical providers. (Def.'s Moving Br. 1-2, ECF No. 52-1.) Second, the Hospital argues that, in any event, it attempted to provide Mr. and Mrs. Lee with a remote interpreter through a VRI service and approved an on-site, live interpreter, but Mr. and Mrs. Lee chose to leave before the Hospital was able to secure these services. (*Id.* at 1.) Third, the Hospital argues that Mr. and Mrs. Lee's claims must be dismissed because Mr. and Mrs. Lee lack standing to pursue injunctive relief. (*Id.* at 2.) Finally, the Hospital argues that Mr. and Mrs. Lee's claim for damages under the RA and NJLAD must also be dismissed because Mr. and Mrs. Lee cannot demonstrate that the Hospital acted with "deliberate indifference." (*Id.*)

Mr. and Mrs. Lee argue that they establish a prima facie case and triable issues of fact exist. First, Mr. and Mrs. Lee argue that the ADA, RA, and the NJLAD all require that the Hospital ensure effective communication with deaf individuals who use ASL by providing reasonable accommodations. (Pls.' Opp'n Br. 3, ECF No. 55.) Second, Mr. and Mrs. Lee argue that whether the Hospital ensured effective communication and if the Hospital was deliberately indifferent is a question of fact. (*Id.* at 6.) Finally, Mr. and Mrs. Lee argue that they have standing for injunctive relief because the Hospital is the closest emergency care facility to their home, and they have been to this hospital numerous times for care. (*Id.*)

To begin, it must be noted that "when a plaintiff sues under both the RA and the ADA, [the Court] often 'address[es] both claims in the same breath.'" *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (quoting *Chambers ex rel. Chambers v. Sch. Dist.*

7

*of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009)).[2] Under either the ADA or the RA, to establish a claim for relief, Mr. and Mrs. Lee must demonstrate that they (1) were disabled, (2) the Hospital is a "place of public accommodation under" Title III of the ADA and (3) it unlawfully discriminated against Mr. Lee on the basis of his disability by (a) failing to make a reasonable modification that was (b) necessary to accommodate his disability. *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019) (citation omitted); *see also Berardelli*, 900 F.3d at 117 (concluding that Title III of the ADA and RA "impose the same substantive liability standard and require a unified approach to the 'reasonableness' of accommodations and modifications."). Whether a hospital has provided appropriate auxiliary aids to a deaf patient is typically a fact-intensive inquiry, however, "not every denial of a request for an auxiliary aid precludes summary judgment or creates liability under the ADA or the [RA]." *Martin v. Halifax Healthcare Sys., Inc.*, 621 F. App'x 594, 602 (11th Cir. 2015) (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012)). Additionally, NJLAD claims are interpreted consistently with both the ADA and RA. *See Chilsolm v. McManimon*, 275 F.3d 315, 324 n.9 (3d Cir. 2001).

How Title III of the ADA and Section 504 of the RA are practically implemented bear substantial resemblance to one another. The ADA requires that a hospital must "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities" and specifies that "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used

---

[2] Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Similarly, Section 504 of the Rehabilitation Act provides, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

8

by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1).

Similarly, the implementing regulations of the RA provide that a recipient hospital that provides health services or benefits (i) shall "establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care"; (ii) shall "provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question"; and (iii) "[is] not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons" in its use of "aids, benefits, and services," "but must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. §§ 84.4(b)(2), (c), 84.52(d)(1).

The regulations state, however, that "the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication." 28 C.F.R. § 36.303(c)(1)(ii). Further, "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.* Important here, the regulations also outline the circumstances under which it is appropriate to rely on an adult accompanying the individual with a disability including "[i]n an emergency involving an imminent threat to the safety or welfare of an individual . . . where there is no interpreter available" or "where the individual . . . specifically requests." 28 C.F.R. § 36.303(c)(3).

9

Mr. and Mrs. Lee request declaratory, injunctive and monetary relief. (*See generally* Compl.) In light of the similarities between the ADA, RA and NJLAD, the Court will address all of Mr. and Mrs. Lee's claims together. *See Chilsolm*, 275 F.3d at 324 n.9.

### 1. Injunctive and Declaratory Relief

Article III of the Constitution requires that plaintiffs have standing to sue for injunctive relief. U.S. Const. art. III. To satisfy the constitutional standing requirements, Mr. and Mrs. Lee must have (1) "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) [an] injury [that] is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 364 (D.N.J. 2020) (internal quotation marks omitted).

A plaintiff has standing to seek injunctive relief under the ADA "only if the plaintiff has sufficiently demonstrated a past injury in the form of ADA discrimination and the likelihood that the injury will be repeated when the plaintiff returns to the place of discrimination." *La. Counseling & Fam. Servs. Inc. v. Mt. Fuji Japanese Rest.*, No. 08-6143, 2011 WL 3273548, at *4 (D.N.J. July 27, 2011) (citations omitted). Courts in this District have routinely considered the following four factors to determine whether a plaintiff has alleged a threat of future injury that is sufficiently concrete and particularized: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the plaintiff's frequency of nearby travel; and (4) the definiteness of the plaintiff's plan to return. *Id.* (citations omitted).

As to the first prong, Defendant argues that Mr. and Mrs. Lee have not suffered an injury-in-fact because there was effective communication during Mr. and Mrs. Lee's visit to the Hospital. (Defs.' Moving Br. 23.) Mr. and Mrs. Lee counter that (1) generally, written notes will most likely not result in effective communication in many hospital interactions and (2) in this particular

10

instance, there was not effective communication such that Mr. and Mrs. Lee suffered an injury-in-fact. (Pls.' Opp. Br. 12-13.) The Court addresses each of these arguments in turn.

First, Mr. and Mrs. Lee cite guidance from the Department of Justice that "interpreters should be used when the matter involves more complexity, such as in communication of medical history or diagnoses, in conversations about medical procedures and treatment decisions, or in communication of instructions for care at home or elsewhere." 28 C.F.R. Pt. 36, App. A. While the guidance is helpful, it is not dispositive. No provision within the ADA or RA require that the Hospital provide a live interpreter. Instead, when measuring the accommodation required, Courts must consider "the nature, length and complexity of the communication" involved. 28 C.F.R. § 36.303(c)(1).[3] This principle is best illustrated in *Borngesser ex rel. Est. of Borngesser v. Jersey Shore Med. Ctr.*, 774 A.2d 615, 625 (N.J. Super. Ct. App. Div. 2001). In *Borngesser*, the plaintiffs brought RA and NJLAD claims against a hospital for failure to provide appropriate auxiliary services. *Id.* at 617-18. The matter went to trial, where the jury found in favor of defendants. *Id.* at 617. Upon appeal, the Appellate Division reiterated that "[n]either the precedents nor the regulations . . . establish a per se rule that sign language interpreters are always mandated." *Id.* at 623. The court next reiterated that "[w]hat auxiliary aids would be required is a fact-sensitive issue that must be considered within the parameters of what is meant by 'effective communication.'" *Id.* Ultimately, the appellate court held that "the hospital's reliance upon written notes in the context of the staff's everyday routine care of [the plaintiff] would likely satisfy § 504." *Id.* at 625. Here,

---

[3] For the sake of completeness, the Court notes that DOJ guidance clarifies that the appropriateness of "particular auxiliary aids and services may vary as a situation changes" and suggests that the exchange of handwritten notes for "minor medical emergenc[ies]" that require a visit to an emergency department may be appropriate. 28 C.F.R. § Pt. 35, App. A. The regulations also advise public entities to "keep individuals with disabilities apprised of the status of the expected arrival of an interpreter" which the Hospital did here. *Id.*; *see* Smit. Certification Ex. C.

the Court rejects Mr. and Mrs. Lee's blanket statement that, generally, written notes will most likely not result in effective communication in many hospital interactions. (*See* Pls.' Opp. Br. 12.)

Second, the Court, in finding that written notes are not per se ineffective during hospital interactions, also finds that based on the nature, length and complexity of the issue present here, the exchange of written notes was effective communication in this instance. *Juech v. Children's Hosp. & Health Sys., Inc.*, 353 F. Supp. 3d 772, 781 (E.D. Wis. 2018) (stating that the focus at the summary judgment stage is "whether evidence exists from which a reasonable finder of fact could conclude that [plaintiff] was denied the use of auxiliary aids necessary for effective communication."). The evidence reflects that Mr. and Mrs. Lee were able to communicate with the medical staff during the height of the emergency to describe Mr. Lee's condition and the cause of injury. As such, Mr. and Mrs. Lee provide no evidence to support that they suffered an injury-in-fact. Mr. and Mrs. Lee went to the Hospital because Mr. Lee fell at home and chipped two teeth. (DUMF ¶ 1.) The medical record indicates that Mr. and Mrs. Lee communicated to the Hospital staff how Mr. Lee was injured, his symptoms, and the basic medical treatment needed to treat his injury. (*See generally* Barton Certification Ex. C.) The record also indicates that the Hospital staff communicated to Mr. and Mrs. Lee throughout the course of treatment enough to administer stitches and order an X-ray. (*Id.*)

The Court finds that based on the record here, the Hospital provided the auxiliary aids necessary to ensure that Mr. and Mrs. Lee could communicate with hospital staff during their brief emergency room visit at a level required by law. Although the VRI machine apparently malfunctioned, Mrs. Lee exchanged handwritten notes with the Hospital's staff. (DUMF ¶ 10.) The handwritten notes indicate that the Hospital staff was able to ascertain the reason for Mr. and Mrs. Lee's visit, his injury, and assess his medical condition. (*See* Barton Certification Ex. C.)

Moreover, the record indicates that the Hospital did request an interpreter, but Mr. and Mrs. Lee left, refusing medical treatment before the interpreter could arrive. (*See* Barton Certification Ex. B, at 6.) The Hospital staff also proposed admitting Mr. Lee overnight and subsequently providing a full work up once an interpreter became available. (*See* Barton Certification Ex. C, at 2-3.)[4] Instead, Mr. Lee signed a form indicating he was refusing medical treatment. (Barton Certification Ex. B, at *15.)[5]

In addition, Mr. and Mrs. Lee's visit to the Hospital totaled approximately four hours for non-critical care. (PSMF ¶¶ 12; 34; Def.'s Moving Br. 4.) The effectiveness of the communication is bolstered by the evidence in the record that Mr. and Mrs. Lee both routinely have medical visits without the need of an interpreter, including during the delivery of their children at the Hospital. (DUMF ¶¶ 21-22; RDUMF ¶¶ 21-22.) Notably, Mr. Lee did not use interpreters in his follow-up visits with his dentist concerning the very injury for which Mr. and Mrs. Lee sought treatment at the Hospital. (DUMF ¶¶ 16, 19; RDUMF ¶¶ 16, 19.) These facts, taken together, support granting summary judgment in favor of Defendant.

Mr. and Mrs. Lee again stress that the record indicates that they were not able to effectively communicate during Mr. Lee's hospital visit. (*See* PSMF ¶¶ 25, 28-32.) They also draw parallels to case law in which district courts declined to grant summary judgment motions in favor of hospitals under the ADA and RA, and further argue that these cases illustrate that a material dispute

---

[4] Mr. and Mrs. Lee cite to the declaration of Ms. Christine Sherwood, the Director of ASL Interpreter Referral Service, to argue that an interpreter was never requested. (*See* Smit. Certification Ex. J.) The Court finds this unpersuasive. First, the contemporaneous medical records indicate that an interpreter was contacted that night and was unavailable. (*See* Smit Certification Ex. C at 3.) Second, this report does not contradict that the Hospital's policy provides for another organization that the Hospital contacts to provide an interpreter.

[5] Page numbers preceded with an asterisk reference the page numbers at the top of the ECF filing.

of fact exists here. (*See* Pls.' Opp. Br. 14-15.) The Court already addressed Mr. and Mrs. Lee's first argument at length above.[6] Regarding Mr. and Mrs. Lee's case citations, they are factually distinct in both the complexity and length of the medical visits. Indeed, the cases relied on by Mr. and Mrs. Lee involve multi-day hospital visits or repeated visits, intricate medical or surgical procedures, or severe medical conditions. *See Biondo v. Kaledia Health*, 935 F.3d 68, 71 (2d Cir. 2019) ("[A] reasonable jury could find, given the circumstances, that the failure to provide [an interpreter] deprived [the plaintiff] of 'an equal opportunity to benefit from' the hospital's services given her limitations with written English, the length of her [six-day] hospital stay, and the procedures performed and information imparted." (quoting 45 C.F.R. § 84.52(d)(1))), *cert. denied* 140 S. Ct. 956 (2020); *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 830 (11th Cir. 2017) (concluding that plaintiffs had standing where there were repeated instances where they visited defendant hospitals, the VRI machine malfunctioned, and a live interpreter was not present); *Liese*, 701 F.3d at 343-44 (finding sufficient evidence that lipreading, writing notes and pantomiming were ineffective where the plaintiff went through a "battery of tests" and required emergency surgery); *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 399, 408-13 (M.D. Pa. 2019) (denying in part defendants' motion for summary judgment where plaintiff required surgery and was subsequently hospitalized for five days); *Bates v. Delmar Gardens N., Inc.*, No. 15-00783, 2017 WL 4038132, at *1 (E.D. Mo. Sept. 13, 2017) (denying in part defendant's motion for

---

[6] Mr. and Mrs. Lee also submitted an extensive expert report by Dr. Judy Shepard-Kegl, including a comprehensive assessment of the nature of the Mr. and Mrs. Lee's disability and Dr. Shepard-Kegl's opinion that an interpreter was likely needed. (*See generally* Smit Certification Ex. E.) Despite its explanation of Mr. and Mrs. Lee's disability and Dr. Shepard-Kegl's opinion, the report does not create an issue of material fact. As the report notes, Mrs. Lee "can construct basic sentences and she can read if the language is simple," (*See* Smit Certification Ex. E at 105), which the medical records indicate it was. Most importantly, however, the report does not contradict that Mr. and Mrs. Lee declined to wait for an interpreter after the most emergent medical treatment was given and instead decided to leave against medical advice.

summary judgment where plaintiff underwent hip surgery and was transferred to rehabilitative center for thirteen days); *Reed v. Schuylkill Health Sys.*, No. 13-1175, 2013 WL 6479127, at *1 (M.D. Pa. Dec. 9, 2013) (denying defendants' motion to dismiss where plaintiff was twice admitted for a total of approximately 22 days due to severe pain resulting from a fall, was ignored, humiliated, and treated like a "non-person" by defendants); *Negron v. Snoqualmie Valley Hosp.*, 936 P.2d 55, 57 (Wash. Ct. App. 1997) (the plaintiff was hospitalized with severe pneumonia and possible sepsis for two weeks coupled with subsequent future visits); *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1332 (N.D. Cal. 1994) (finding a genuine dispute as to defendants' compliance with the ADA where a deaf spouse attempted to secure an interpreter after husband suffered massive heart attack and was put on life support); *cf. Martin*, 621 F. App'x at 602-03 (finding a reasonable jury could not find for plaintiffs where hospital staff used "simple but detailed written notes and graphics" in addition to periodic interpreter services and that an interpreter was not needed where plaintiff went to the emergency room for "essentially a 'bump on the head'" (citation omitted)).

In any event, the Court also finds that Mr. and Mrs. Lee have not sufficiently demonstrated a likelihood of a future injury to establish that they have standing to seek injunctive relief. Notably, Mr. and Mrs. Lee have only returned to the Hospital once since the incident, during which time they were provided with an interpreter. (*See* Decl. of Lynne Hofstaedter, Ex. A.) This fact alone cuts sharply against any reasonable finding that Mr. and Mrs. Lee are likely to suffer future injury.[7]

---

[7] Mr. and Mrs. Lee rely on a declaration from another Deaf patient of the Hospital, Ms. Joanna Chaitram, to suggest that there is a likelihood of future injury. (*See* Smit Certification Ex. D.) The Court finds this declaration unpersuasive, however. In particular, the declaration solely asserts that Ms. Chaitram was a patient at the Hospital and requested an interpreter that was not provided. This assertion provides no facts for the Court to assess whether an interpreter was necessary during Ms.

And while Mr. and Mrs. Lee claim they seek injunctive relief to ensure this does not happen again (Pls.' Opp'n Br. 32), the Hospital already has a policy in place requiring staff to be trained in how to accommodate patients who need hearing assistance. (*See* Def.'s Moving Br. 5-6.) Moreover, putting aside that Mr. and Mrs. Lee were provided a live interpreter during their November 2019 visit, there is no evidence that the VRI machine continues to malfunction or is otherwise an unavailable backup on a consistent basis. *See Giterman*, 361 F. Supp. 3d at 407 (finding the plaintiff had not demonstrated a likelihood of future injury, in part, because plaintiff did not demonstrate any permanent or ongoing issue with VRI machine). The Court thus finds that Mr. and Mrs. Lee fail to state a claim for injunctive or declaratory relief.

### C. Claim for Damages Under the RA and NJLAD

Unlike Mr. and Mrs. Lee's ADA claim, monetary damages are available under the RA and NJLAD.[8] To recover monetary damages, Mr. and Mrs. Lee must show intentional discrimination. Even assuming that Defendant failed to provide the appropriate auxiliary aid by not providing a live interpreter, this is not enough to sustain a claim for monetary damages. *See Martin*, 621 F. App'x at 602 ("[N]ot every denial of a request for an auxiliary aid precludes summary judgment or creates liability under the ADA or the Rehab Act . . . [o]therwise, a requested service would automatically be transformed into a 'necessary' service merely by the fact that it was requested."). Intentional discrimination requires a showing that the hospital was deliberately indifferent. *Ali v. City of Newark*, No. 15-8374, 2016 WL 3014401, at *4 (D.N.J. May 25, 2016) (citing *S.H. ex rel. Durrel v. Lower Marion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)). To satisfy the deliberate

---

Chaitram's visit such that it is probative of whether the Hospital is likely to fail to provide an interpreter in the future where it is needed.

[8] The only remedies available under Title III of the ADA are declaratory and injunctive relief; monetary damages are not available. *See Costow v. Live Nation Ent., Inc.*, No. 15-664, 2017 WL 1134382, at *3 (D.N.J. Mar. 27, 2017) (citing 42 U.S.C. § 12188).

indifference standard, Mr. and Mrs. Lee must show that Defendant: (1) had "knowledge that a federally protected right [was] substantially likely to be violated, and (2) fail[ed] to act despite that knowledge." *Durrell*, 729 F.3d at 265 (citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

Here, while the Court need not reach the question of whether the Hospital acted with deliberate indifference because it finds that Mr. and Mrs. Lee failed to meet their burden of proving that there was a violation, for the avoidance of doubt, the Court also notes Mr. and Mrs. Lee have not demonstrated that the Hospital acted with deliberate indifference. As mentioned above, on Mr. and Mrs. Lee's arrival at the Hospital, the Hospital attempted to use an interpreter through the VRI machine. Once that machine malfunctioned, the Hospital promptly requested an interpreter, though as mentioned above, Mr. and Mrs. Lee left that evening before the interpreter could arrive the next morning. The Court finds that there is no material dispute of fact that Mr. and Mrs. Lee suffered an injury-in-fact, much less that Defendant acted with deliberate indifference.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the Hospital's Motion for Summary Judgment. An appropriate order will follow.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**